UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN GRANDERSON,

    Petitioner,                            Case No. 1:17-CV-11355
v.                                            HONORABLE THOMAS L. LUDINGTON
                                                  UNITED STATES DISTRICT JUDGE

SHANE JACKSON,

    Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner, John Granderson, presently incarcerated at the Macomb Regional Correctional Facility in New Haven, Michigan, has filed a *pro se* application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted by a jury in the Saginaw County Circuit Court of conspiracy to commit murder, Mich. Comp Laws §§ 750.157a and 750.316(a), first-degree arson, Mich. Comp Laws § 750.72, conspiracy to commit first-degree arson, Mich. Comp Laws §§ 750.157a and 750.72, threatening a witness, Mich. Comp Laws § 750.122(7)(c), six counts of assault with intent to commit murder, Mich. Comp Laws § 750.83, felon in possession of a firearm, Mich. Comp Laws § 750.224f, and six counts of felony-firearm, Mich. Comp Laws § 750.227b.

Petitioner now contends that there was insufficient evidence to convict him, that the admission of several pieces of evidence violated his right to due process, and that he was denied the effective assistance of counsel. Respondent filed an answer to the petition, asserting that the claims lack merit. The Court agrees that Petitioner's claims are without merit, therefore the petition will be denied.

**I.**

Petitioner was tried and convicted with his co-defendant, Jemarcus Jovon Watkins. The relevant facts are recited verbatim from the opinion by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009). The opinion provides:

> Jeremy Prince testified that he attended middle school and high school with Granderson, codefendant Jemarcus Jovon Watkins, and Anterio Patton. According to Prince, he attended a pre-prom party in May 2013. During the party, there was a commotion involving Patton. Phillip Hudson, a friend of Patton, testified that Patton and Evillis McGee "had a problem with each other." According to Prince, someone fired 12 or 13 shots into the crowd during the pre-prom party, and Ne–Ne McKinley was killed.
>
> Patton's mother testified that she was present at the pre-prom party with Patton. According to Patton's mother, she had just given Patton a hug when "the crowd went to backing up, and I seen some guys with some guns." The men with guns began shooting. Patton's sister testified that she was also at the pre-prom party and saw Watkins, Karon Thomas, and two other men shoot into the crowd.
>
> Saginaw City Police Detective Matthew Gerow testified that he investigated the pre-prom shooting. According to Detective Gerow, McGee and Thomas were charged with murder in connection with McKinley's death. Detective Gerow testified that Patton testified at McGee and Thomas's preliminary examination. Patton's mother testified that Patton intended to testify at the murder trial on July 26, 2013.
>
> Patton's home was attacked early in the morning on July 11, 2013. According to Prince, a friend dropped him off near Patton's home to meet his ex-girlfriend, who was at Patton's house. Patton was not there at the time, but Patton's family and some friends were present. At about 12:30 a.m., a van drove by the house. About three minutes later, Prince saw someone approach the house with something in one hand. Prince yelled, grabbed his ex-girlfriend, and then heard "the loudest bang I ever heard in my life." Prince realized that he, his ex-girlfriend, and the house were on fire. The people outside began shooting at the house.
>
> Prince extinguished the fire that was on him and then went to retrieve a gun. When he looked outside, he saw that the front of the house was on fire and Granderson was shooting an assault-style rifle at the house. Prince tried to get everyone into the house's basement, but once there, he realized that his ex-girlfriend was not present. Prince went back upstairs to find her and saw someone enter the home, carrying a handgun:

> He was like right there on the porch, coming into the door, but I see him, but he's look around like, and I see him.... [W]hen we made eye contact, his eyes got big, because I was shocked about who I seen.

Prince then testified that the person was Watkins, who ran back outside. Prince found his ex-girlfriend and went into the basement to wait for police and firefighters to arrive. Prince believed Granderson and Watkins had set the house on fire and then waited for the occupants to come outside so that they could "pick [them] off."

According to Hudson, who was also in Patton's home at the time of the arson, at least three people were shooting into the home. Hudson testified that he believed that Granderson was one of those people, but he was not entirely certain of his identification because he was under the influence of drugs at the time.

Detective Gerow testified that he also investigated the arson. According to Detective Gerow, he visited Prince in the hospital shortly after the arson. Prince was initially hesitant to speak with him, but Prince eventually identified Granderson and Watkins, and he seemed "100 percent positive about his identification."

Prince testified that he told officers that he thought Vanity Mims was driving the van, but he was not certain. According to Prince, "[t]he reason I brought her up was because I know that Vanity was ... associated with [Watkins]." Prince also testified that the word "on the street" was that Mims was going to "come to court and testify and say that [Watkins] was with her." Officer Coleman testified that he interviewed Prince, who told him that Mims "was going to come into court and attempt to be an alibi witness ... on behalf of [Granderson and Watkins]." Mims did not testify at the trial.

Granderson testified that he was not affiliated with any gang, but he was "familiar with the East Side because I stay over there." According to Granderson, after he finished a term of incarceration in December 2011, he kept to himself and did not associate with his old friends. Granderson was especially reluctant to associate with people who carried weapons. In rebuttal, Saginaw Police Department Officer Erik Skabardis testified that on June 12, 2012, he encountered Granderson among East Side people "hanging out" in a vacant lot. He discovered "a bag full of guns" not more than 30 feet from the individuals.

Granderson also testified that on the night of the arson, he was at his sister's home in the Sheridan Park neighborhood. Granderson's sister Brittany Houston testified that Granderson stayed with her and her friend, Ja'Quise O'Daniels, on July 11, 2013. Brittany Houston testified that Granderson watched O'Daniels's one-year-old child while O'Daniels went to Wal–Mart from about midnight to 1:40 a.m. Granderson's sister Brandy Houston also testified that Granderson was in the home at about 1:30 a.m. when she woke up to use the bathroom, and that she knew that O'Daniels had gone to Wal–Mart that evening because she noticed that there were new groceries in the house.

> O'Daniels testified that Granderson watched her one-year-old child while she went to Wal–Mart on the night of July 11, 2013. Granderson was still present and awake when she returned from the store. However, on cross-examination, O'Daniels acknowledged that the card she used to purchase groceries showed a purchase at Wal–Mart on July 20, 2013, at about 1:00 a.m., but no purchases on July 11, 2013. O'Daniels admitted that she had made a mistake about the date on which she purchased groceries.

*People v. Granderson*, No. 321113, 2015 WL 4254954, at *1–3 (Mich. Ct. App. July 14, 2015)(internal footnote omitted).

Petitioner's conviction was affirmed. *Id.*; 499 Mich. 935, 879 N.W.2d 251 (2016).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Petitioner was denied his constitutional right of due process of law because evidence of conspiracy was insufficient to support his convictions.

II. Petitioner was denied a fair trial by the admission, over objection, of a gruesome photograph of a dead teen-aged girl who [was] shot to death in a prior incident in which petitioner had no part in, and by inflammatory argument by the prosecutor.

III. Petitioner was denied a fair trial by the admission, over objection, of a photograph of petitioner holding a rifle totally unconnected to the instant offense, which was used improperly by the prosecutor and by the elicitation of testimony that the gun used in the instant case looked like the gun in the photograph.

IV. Petitioner was denied his constitutional right to confrontation and his right to a fair trial by the admission, over objection, of hearsay evidence that petitioner and codefendant were planning false alibis, as well as hearsay evidence from police officers improperly corroborating the star prosecution witness' [*sic*] testimony and offering an opinion on the ultimate issue of identification.

V. The admission of irrelevant, unduly prejudicial, improper rebuttal testimony on a collateral matter denied petitioner a fair trial.

VI. The trial judge's questioning of petitioner's alibi witnesses during which the judge took on the role of the prosecutor, demonstrated bias against the defense and denied petitioner a fair trial.

VII. Evidence of the prior shooting was inadmissible as to petitioner and denied him a fair trial because he was not present and did not participate in the prior bad act.

VIII. Evidence of assault with intent to murder is insufficient. Petitioner has been denied due process of law and his conviction must be reversed.

IX. Petitioner was denied his constitutional right to a fair trial by the admission, over objection, of a vast array of photographs of various people flashing gang signs when it was never proven that petitioner was a member of a gang.

X. Petitioner's trial counsel was ineffective for failing to move for severance because he was unfairly prejudiced by being tried with his co-defendant.

## II.

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.,* at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

### III.

### A.

Petitioner in his first and eighth claims argues that there was insufficient evidence to convict him.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

When considering a challenge to the sufficiency of the evidence to convict, the reviewing court gives circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006)(internal quotation omitted); *see also Saxton v. Sheets*, 547 F.3d 597, 606 (6th Cir. 2008)("A conviction may be sustained based on nothing more than circumstantial evidence."). Moreover, "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003)(quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 508, n.17 (1957)); *see also Holland v. United States*, 348 U.S. 121, 140 (1954)(circumstantial evidence is "intrinsically no different from testimonial evidence," and "[i]f the jury is convinced beyond a reasonable doubt, we can require no more"); *Harrington,* 562 U.S. at 113 ("sufficient conventional circumstantial evidence" supported the verdict).

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim merely because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* For a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to

fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

**1.**

Petitioner in his first claim argues that there was insufficient evidence to sustain his conspiracy convictions. The Michigan Court of Appeals rejected Petitioner's claim:

> In this case, the testimony established that Granderson, Watkins, and at least one other person arrived at Patton's house, armed with weapons. Prince testified that one of the men had something in his hand, which he threw at the house. The house immediately caught on fire, and then the other two men—including Granderson, who was armed with an assault-style weapon—shot at the house. Considering this circumstantial evidence and allowing the jury to apply common sense and every day experience to it, a rational jury could find beyond a reasonable doubt that Granderson and the other men involved in the arson intended to combine together for unlawful purposes. It is incredibly unlikely, in the absence of a prior agreement, three armed men would independently arrive at Patton's house at the same time of the morning and act in concert to set the house on fire and shoot at it. We conclude that the prosecution presented sufficient evidence of an agreement between the participants in the arson and shooting.

*People v. Granderson*, 2015 WL 4254954, at *9.

Under Michigan law, a conspiracy is defined as "a mutual agreement or understanding, express or implied, between two or more persons to a commit a criminal act." *Cameron v. Birkett,* 348 F. Supp. 2d 825, 839 (E.D. Mich. 2004)(quoting *People v. Carter*, 415 Mich. 558, 567; 330 N.W.2d 314 (1982)). "[A] two-fold specific intent is required for conviction: intent to combine with others, and intent to accomplish the illegal objective." *Carter*, 415 Mich. at 568. Direct proof of an agreement is not required, nor is proof of a formal agreement necessary. Rather, it is sufficient that the circumstances, acts, and conduct of the parties establish an agreement. *People v. Cotton*, 191 Mich. App. 377, 393; 478 N.W.2d 681 (1991). A conspiracy may be proven by circumstantial evidence or may be based on inference. *Id.*

"Under Michigan law, anyone who knowingly agrees with someone else to commit first degree premeditated murder is guilty of conspiracy to commit first degree premeditated murder[,]." *Bechtol v. Prelesnik*, 568 F. App'x 441, 449 (6th Cir. 2014). Under Michigan law, "[t]o prove conspiracy to commit murder, it must be demonstrated that each conspirator had the requisite intent to commit the murder." *Cameron,* 348 F. Supp. 2d at 839 (quoting *People v. Buck*, 197 Mich. App. 404, 412; 496 N.W.2d 321, 327 (1992), *rev'd in part on other grounds sub nom. People v. Holcomb*, 444 Mich. 853, 508 N.W.2d 502 (1993)). "The prosecution must demonstrate that the conspirators deliberated and planned the crime with the intent to kill the victim." *Id.*

To obtain a conviction for first-degree murder, the prosecutor must prove that a defendant's intentional killing of another was deliberated and premeditated. See *Scott v. Elo*, 302 F.3d 598, 602 (6th Cir. 2002)(citing *People v. Schollaert*, 194 Mich. App. 158; 486 N.W.2d 312, 318 (1992)). The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. See *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001)(citing *People v. Anderson*, 209 Mich. App. 527, 537; 531 N.W.2d 780 (1995)). Premeditation may be established through evidence of the following factors:

　　1. the prior relationship of the parties;
　　2. the defendant's actions before the killing;
　　3. the circumstances of the killing itself;
　　4. the defendant's conduct after the homicide.

*Cyars v. Hofbauer,* 383 F.3d 485, 491 (6th Cir. 2004); *Anderson*, 209 Mich. App. at 527.

Under Michigan law, the elements of arson of a dwelling house [1] are: (1) a dwelling house was burned; (2) by, or at the urging of, or with the assistance of the defendant; and (3) the fire was willfully or maliciously set. *See Gardner v. Kapture,* 261 F. Supp. 2d 793, 804 (E.D. Mich.

---

[1] In 2013, the Michigan Legislature changed the name of Mich. Comp. Laws § 750.72 from arson in a dwelling house to first-degree arson.

2003)(citing *People v. Lindsey*, 83 Mich. App. 354, 355; 268 N.W.2d 41 (1978)). Under Michigan law, circumstantial evidence, including evidence of a defendant's motive and opportunity, may be considered in an arson case. *See Bagnick v. Michigan Dept. Of Corrections,* 37 F. App'x 125, 128 (6th Cir. 2002)(citing *People v. Horowitz*, 37 Mich. App. 151, 154; 194 N.W.2d 375, 376 (1971)). "In fact, due to the usually surreptitious nature of the offense of arson, 'proofs will normally be circumstantial.'" *Id.*

The evidence established that Petitioner conspired with the other defendants to kill the victims and set the house on fire. It established that Petitioner, Watkins, and at least one other man went to the house while armed with firearms. One of the men took an object and threw it at the house, which immediately caught on fire. The other men, including Petitioner, who was armed with an assault rifle, began shooting at the house. Although mere presence at a crime scene is insufficient to show participation in a conspiracy, a defendant's participation in a conspiracy's common purpose and plan may be inferred from the defendant's actions and reactions to the circumstances. *See United States v. Hernandez,* 31 F.3d 354, 358 (6th Cir.1994). Petitioner's actions here show that he was clearly involved in the conspiracy to set fire to the victim's house and to murder the victims. The petitioner is not entitled to habeas relief on his first claim because the Michigan Court of Appeals reasonably concluded that from the evidence a rational trier of fact could have found the essential elements of conspiracy to commit first degree murder and first-degree arson beyond a reasonable doubt. *Bechtol v. Prelesnik*, 568 F. App'x at 449.

**2.**

Petitioner in his eighth claim argues there was insufficient evidence to sustain his assault with intent to commit murder convictions because the evidence did not show that Petitioner intended to kill the victims. The Michigan Court of Appeals rejected this claim:

> In this case, Granderson was part of a group of men who set fire to a home and shot at its occupants. Prince testified that it appeared to him that the assailants wanted to set fire to the home and then pick the occupants off one by one as they attempted to escape. The jury could reasonably infer from the evidence that Granderson's actions were beyond reckless and that he specifically intended to kill the occupants of the home, rather than merely frighten them. We conclude that the prosecution presented sufficient evidence to support Granderson's assault convictions.

*People v. Granderson,* 2015 WL 4254954, at *10.

Under Michigan law, the elements of assault with intent to commit murder in Michigan are: (1) an assault; (2) with an actual intent to kill; (3) which if successful, would make the killing murder. *See Warren v. Smith,* 161 F.3d 358, 361 (6th Cir. 1998); *See also Steele v. Withrow,* 157 F. Supp. 2d 734, 740 (E.D. Mich. 2001). The intent to kill element does not equate with murder. *Warren,* 161 F.3d at 361 (citing *People v. Taylor*, 422 Mich. 554; 375 N.W.2d 1, 7 (1985)). Thus, an intent to kill for purposes of this offense may not be proven by an intent to inflict great bodily harm or a wanton and willful disregard of the likelihood that the natural tendency of the acts will likely cause death or great bodily harm. *Id*. A conviction for assault with intent to commit murder must be premised upon a defendant's specific intent to kill. *Steele,* 157 F. Supp. 2d at 740 (citing *People v. Edwards*, 171 Mich. App. 613, 620; 431 N.W.2d 83 (1988)).

The intent to kill, for purposes of the crime of assault with intent to commit murder, need not be proved by direct, positive, or independent evidence, and the trier of fact may draw reasonable inferences from the facts and evidence in determining the existence of an intent to kill. See *Taylor*, 422 Mich. at 567-68. In determining the defendant's intent, a court may take into account "[t]he nature of the defendant's acts constituting the assault; the temper or disposition of mind with which they were apparently performed, whether the instrument and means used were naturally adapted to produce death, his conduct and declarations prior to, at the time, and after the assault, and all other circumstances calculated to throw light upon the intention with which the

assault was made." *Id.* at 568 (quoting *Roberts v. People*, 19 Mich. 401, 415-16 (1870)). The use of a lethal weapon will support an inference of an intent to kill. *Steele,* 157 F. Supp. 2d at 740; *People v. Ray*, 56 Mich. App. 610, 615; 224 N.W.2d 735 (1974).

Petitioner's involvement with two other men in setting fire to a house and then shooting at the house with an assault weapon was sufficient for a rational trier of fact to conclude that Petitioner intended to kill the victims, so as to support his assault with intent to commit murder convictions. A review of the record reveals that, while there may have been conflicting evidence concerning Petitioner's intent, there exists a factual basis upon which the state court finding that petitioner possessed the intent to kill may be supported, so as to deny petitioner habeas relief. *Warren,* 161 F.3d at 362. Petitioner is not entitled to relief on his eighth claim.

**B.**

Petitioner's second, third, fourth, fifth, seventh, and ninth claims will be consolidated for judicial clarity. Petitioner claims that he was denied due process and a fair trial by the admission of various forms of evidence.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000).

Petitioner in his second claim argues that his due process rights were violated by the admission of a photograph of the murder victim Ne-Ne McKinley from the pre-prom party in May of 2013. He contends that these photographs were inflammatory and prejudicial.

Petitioner's claim that the trial court admitted photographs of the murder victim from the earlier pre-prom party fails to state a claim upon which habeas relief can be granted. *See e.g. Franklin v. Bradshaw,* 695 F.3d 439, 456-57 (6th Cir. 2012)(state court's determination that petitioner's right to a fair trial was not violated by admission of 18 gruesome autopsy photographs of his victims that were shown to jurors on a large projector screen during trial for aggravated arson, aggravated robbery, and aggravated murder). In particular, the introduction of graphic or gruesome photographs of a murder victim does not entitle a petitioner to habeas relief where there is some legitimate evidentiary purpose for the photographs' admission. *See e.g., Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005)(upholding the admission of photographs depicting a victim's severed head, severed breast, and severed body parts placed near the victim's torso because the photographs were highly probative of the prosecutor's claim that Petitioner beat the victim severely and meticulously dissected her body); *Frazier v. Huffman*, 343 F.3d 780, 789 (6th Cir. 2003)(finding acceptable the admission of multiple photographs of the victim used by the coroner to illustrate the nature of the encounter preceding the victim's death); *Cooey v. Coyle*, 289 F.3d 882, 893 (6th Cir. 2002)(observing that "although the photographs were gruesome, they were highly probative").

The Michigan Court of Appeals concluded that the photograph of Ms. McKinley's body was relevant to the theory that Petitioner's motive in the current case was to intimidate witnesses from testifying at McGee's trial concerning the murder. *People v. Granderson*, 2015 WL 4254954, at *4. Because the photograph of Ms. McKinley's body served a legitimate purpose, Petitioner's right to due process was not violated.

Petitioner in his third, fifth, seventh, and ninth claims argues that the trial court erred in admitting various pieces of evidence that were irrelevant, more prejudicial than probative, and were admitted in violation of M.R.E. 404(b) to establish that Petitioner was a bad person.

Petitioner's claim that he was denied a fair trial by the admission of irrelevant and highly prejudicial evidence cannot form the basis for habeas relief, because it involves a state law evidentiary issue. *See Hall v. Vasbinder*, 551 F. Supp. 2d 652, 676 (E.D. Mich. 2008); *rev'd on other grds* 563 F.3d 222 (6th Cir. 2009); *see also Oliphant v. Koehler*, 451 F. Supp. 1305, 1308 (W.D. Mich. 1978). The Sixth Circuit observed that "[t]he Supreme Court has never held (except perhaps within the capital sentencing context) that a state trial court's admission of *relevant* evidence, no matter how prejudicial, amounted to a violation of due process." *Blackmon v. Booker*, 696 F.3d 536, 551 (6th Cir. 2012)(emphasis original). The Michigan Court of Appeals concluded that all of this evidence was relevant under Michigan law for various reasons. *People v. Granderson*, 2015 WL 4254954, at *5-7. This Court will defer to that determination.

Petitioner's claim that the state court violated M.R.E. 404(b) or any other provision of state law by admitting improper character evidence or evidence of prior bad acts is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F.3d 514, 519 (6th Cir. 2007); *Estelle,* 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law); *Dowling v. U.S.*, 493 U.S. 342, 352-53 (1990)(admission at defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate due process). The admission of this "prior bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a

state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003). Petitioner is not entitled to relief on his third, fifth, seventh, or ninth claims.

Petitioner in his fourth claim alleges that the prosecutor improperly admitted hearsay testimony from Mr. Prince regarding rumors that Petitioner was attempting to fabricate an alibi with Ms. Mims. The Michigan Court of Appeals rejected this claim. It found that the evidence was not hearsay because it was not offered for the truth or falsity of Ms. Mims' alibi, but because Mr. Prince himself testified that he told the police this information because Mims had an established relationship with Granderson and Watkins. *People v. Granderson*, 2015 WL 4254954, at *7.

The admissibility of evidence under Michigan's hearsay rules is not cognizable in a habeas corpus proceeding. *See Byrd v. Tessmer,* 82 F. App'x 147, 150 (6th Cir. 2003); *see also Rhea v. Jones*, 622 F. Supp. 2d 562, 589 (W.D. Mich. 2008); *Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002)(petitioner's claim that state court erred in admitting hearsay testimony under state evidentiary rule governing declarations against penal interest not cognizable in federal habeas review, where the claim alleged a violation of state law, not a violation of federal constitutional rights). The Michigan Court of Appeals concluded that this evidence was not hearsay. This Court must defer to that determination.

## C.

In his sixth claim, Petitioner contends that he was deprived of a fair trial by judicial misconduct when the judge asked several questions to his alibi witnesses.

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case.

*See Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). The right to an impartial judge is a right whose deprivation a state prisoner may complain of in a federal habeas corpus proceeding. *Tyson v. Trigg*, 50 F.3d 436, 438 (7th Cir. 1995)(citing to *Turner v. Ohio*, 273 U.S. 510, 523 (1927); *In Re Murchison*, 349 U.S. 133 (1955)). Trial judges have a wide latitude in conducting trials, but they must preserve an attitude of impartiality and scrupulously avoid giving the jury the impression that the judge believes that the defendant is guilty. *Harrington v. State of Iowa*, 109 F.3d 1275, 1280 (8th Cir. 1997); *Brown v. Palmer,* 358 F. Supp. 2d 648, 657 (E.D. Mich. 2005).

In reviewing an allegation of judicial misconduct in a habeas corpus petition, a federal court must ask itself whether the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process. *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995); *Brown v. Palmer,* 358 F. Supp. 2d at 657. To sustain an allegation of bias by a state trial judge as a grounds for habeas relief, a habeas petitioner must factually demonstrate that during the trial the judge assumed an attitude which went further than an expression of his personal opinion and impressed the jury as being more than an impartial observer. *Brinlee v. Crisp*, 608 F.2d 839, 852-53 (10th Cir. 1979); *Brown,* 358 F. Supp. 2d at 657. A trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a significant degree before habeas relief could be granted. *McBee v. Grant*, 763 F.2d 811, 818 (6th Cir. 1985); *Brown,* 358 F. Supp. 2d at 657. The Supreme Court has ruled that "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish judicial bias or misconduct. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994). "A judge's ordinary efforts at courtroom administration-even a stern and short-tempered judge's ordinary efforts at courtroom administration-remain immune." *Id.*

A trial judge may interject himself "into the trial, speak to counsel, and question witnesses in order to clear up confusion regarding the evidence or aid in its orderly presentation." *United States v. Powers*, 500 F.3d 500, 511 (6th Cir. 2007). In the present case, the trial court judge interjected himself only to clarify the witnesses' testimony. It is not unconstitutional under the Due Process Clause for a state trial judge to seek clarification from witnesses at a criminal trial. *Brown v. Palmer,* 358 F. Supp. 2d at 657; *see also Wenglikowski v. Jones,* 306 F. Supp. 2d 688, 695 (E.D. Mich. 2004). "In fact, it is proper for a judge to question a witness when necessary either to elicit the truth or to clarify testimony." *Brown,* 358 F. Supp. 2d at 657. Because the trial court judge's questions were proper, Petitioner is not entitled to habeas relief.

## D.

Petitioner in his tenth claim alleges the ineffective assistance of trial counsel.

To prevail on his ineffective assistance of counsel claims, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: Petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

Petitioner argues that trial counsel was ineffective for failing to move for a separate trial. The Michigan Court of Appeals rejected this argument. It found that there was no basis for a separate trial because Petitioner's defense that he was not at the crime scene and that the co-defendant's misidentification defense were not antagonistic defenses. *People v. Granderson,* 2015 WL 4254954, at *11. Counsel was not ineffective for failing to move for a separate trial.

A criminal defendant is not entitled to a separate trial merely because he might have had a better chance for acquittal in a separate trial, *Zafiro v. United States*, 506 U.S. 534, 540 (1993), nor does a criminal defendant have a right to a separate trial merely because the defendant and the co-defendant present antagonistic defenses. *Stanford v. Parker,* 266 F.3d 442, 458 (6th Cir. 2001). The Supreme Court, has indicated that "mutually antagonistic defenses are not prejudicial *per se.*" *Zafiro v. United States,* 506 U.S. at 538. A court should grant severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539. Joinder of defendants for trial is the preferred course, which creates a presumption in favor of joinder which must be overcome by the party seeking severance. *See Foster v. Withrow,* 159 F. Supp. 2d 629, 641 (E.D. Mich. 2001).

Petitioner is not entitled to habeas relief on his claim because he has failed to show that he and his co-defendant had mutually antagonistic defenses. Further, there has been no showing that Mr. Watkins' misidentification defense was "predicated solely on" Petitioner's guilt. Antagonistic defenses occur "when one person's claim of innocence is predicated solely on the guilt of a co-defendant." *United States v. Harris,* 9 F.3d 493, 501 (6th Cir. 1993).

Because the co-defendant's defense was not mutually antagonistic with Petitioner's defense, counsel was not ineffective for failing to move for a separate trial. *See Lang v. Gundy,* 399 F. App'x 969, 975-76, 978 (6th Cir. 2010).

**IV.**

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional

right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes that petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

**V.**

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus [Dkt. # 1] is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED.**

It is further **ORDERED** that permission to proceed *in forma pauperis* on appeal is **DENIED.**

Dated: May 4, 2020    s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and to **John Granderson** #759555, MACOMB CORRECTIONAL FACILITY, 34625 26 MILE ROAD, NEW HAVEN, MI 48048 by first class U.S. mail on May 4, 2020.

                                              s/Kelly Winslow
                                              KELLY WINSLOW, Case Manager